At about 4:30 o'clock on the morning of August 10, 1947, there was a collision between two automobiles at the corner of Poydras and Carondelet Streets in New Orleans. One of the cars, owned and driven by plaintiff, Lucia, was a taxicab which was on its way down Carondelet Street and the other, a Buick, driven by Joseph E. De Lage, Jr., was going in Poydras Street towards the Mississippi River. They met at just about the center of the *Page 54 
wide intersection, the Buick striking the taxicab on the left, rear fender. The Buick stopped within a very few feet and the taxicab proceeded across Poydras Street, swerved to its left and mounted the curb of the sidewalk on the lower, lake corner of the intersection.
Lucia, alleging that the the collision was caused by negligence of DeLage, brought this suit against him, claiming $179.39 as the cost of repairing the damage which his taxicab sustained, and $100 as the earnings which he lost as a result of being deprived of the use of his taxicab during the ten days it was out of service undergoing repairs. He alleged that DeLage was negligent in the following particulars:
"A. In driving his car and in entering an intersection at an unlawful rate of speed.
"B. In failing to maintain and observe a proper lookout.
"C. In attempting to cross an intersection, ignoring the presence of petitioner's car which was already in said intersection and which had the right-of-way.
"D. In failing to maintain his car under proper control."
In a supplemental petition Lucia alleged that the St. Paul Mercury Indemnity Company is the liability insurance carrier of DeLage, and he prayed for solidary judgment against that company and DeLage for the said amount of $279.39.
The Insurance Company and DeLage filed answer in which they denied that DeLage was in any way at fault and in which they asserted that the collision was caused solely by the negligence of Lucia in that he failed to maintain a proper lookout, failed to keep his vehicle under proper control, and failed "to slacken his speed in the presence of the amber traffic light." Defendants alleged also that Lucia was negligent in attempting to cross the intersection in spite of the fact that the car of DeLage had already entered it and had "gained the right of way."
In the alternative that it should appear that there was any negligence on the part of DeLage, defendants averred that the proximate cause of the accident was not this negligence but was the negligence of Lucia, himself, as set forth above.
There was judgment in favor of plaintiff and against both defendants for $179.39 and both defendants have appealed. Plaintiff has answered the appeal, praying that the amount awarded be increased to $279.39, as originally prayed for.
In addition to the two drivers, DeLage and Lucia, there was one eye witness to the accident, Oliver Williams, who was employed by a garage, located on Carondelet Street about 100 or 125 feet below Poydras Street, and who was standing in the entrance of the garage looking towards the intersection as the two vehicles approached and entered it. All three of these witnesses agree on several things — in the first place, that the traffic light was fixed on amber, meaning that vehicles entering from all directions could proceed but must exercise caution and they agree, too, that just before the Buick of DeLage reached the intersection, he brought it to a stop and that as the taxicab was about to reach the intersection, its driver, Lucia, reduced its speed. They all agree that the taxicab did not stop and that just after the Buick was brought to a stop the speed of the taxicab, which had been reduced, was accelerated and it proceeded into the intersection. The taxicab had reached a point just at or very shortly beyond the center when the Buick, which had again been started forward, struck it on the rear fender.
DeLage says that after stopping his Buick, he started it again because when he saw Lucia reduce the speed of the taxicab he assumed that Lucia would stop for the crossing and let the Buick cross ahead of it. He said: "I more or less took it for granted that the man was stopping * * *."
At that time he says that the taxicab was from 40 to 50 feet away from the intersection, and, although it may have appeared to him that the taxicab, because it was slowing down would be brought to a stop, we think that he was at fault in not waiting until he could be certain of this and that the cause of the accident was his failure to wait until he was certain that it was safe *Page 55 
for him to proceed. According to his own testimony, the last time he saw the taxicab before it entered the intersection, it was only a short distance away and was still in motion. He says that after looking at it at that time, he started his car and that "when I looked up again the cab was in front of me."
Lucia, on the other hand, had actually seen the Buick stop as though its driver intended to wait and since, at that time he was operating his car at a moderate speed and could see into the intersection and notice that the only other vehicle in sight was this Buick which had stopped apparently to let him go by, he was not negligent in entering the intersection without coming to a complete stop. It seems quite certain that, after the Buick was brought to a stop, DeLage again started it forward rather suddenly because Williams, the witness who was standing in front of the garage looking at it says that as it started forward he could hear its motor racing.
The record does not indicate that either car was travelling at an excessive speed, though it is true that the taxicab, after the collision, continued across Poydras Street, swerved to its left and mounted the curb. This seems to have been the result of Lucia's losing control of it rather than the result of its excessive speed. It did not completely cross the sidewalk as DeLage contends. The damage which was sustained by the front of the building resulted not from contact with the taxicab but because the taxicab struck a small news-stand and knocked it into the front of the building.
[1] Our conclusion is that DeLage was at fault and that Lucia was not negligent in entering the intersection as he did.
[2, 3] No reasons were given by the court, a qua, for failure to allow recovery for the loss which plaintiff says he sustained as a result of being deprived of the use of his taxicab for the ten days during which it was undergoing repairs. The only evidence on this item of damage is the testimony of plaintiff, himself, but we are not required to reject his testimony merely because no corroboration is offered. See Franklin v. Texas Pacific R. R. Co.,35 So.2d 251, decided by us on May 10, 1948. Where a claim is based on the uncorroborated testimony of a plaintiff, a court is not required to reject that evidence but merely to scrutinize it carefully in an effort to determine whether there is about it anything which is unreasonable or which indicates that it is not founded on fact.
We find nothing of that kind here and, in fact, the testimony appears to us quite reasonable. The plaintiff says that according to his income tax return he makes an average of $10 per day from the use of his cab. His testimony indicates plainly that he has no other business and that he spends his full time operating his taxicab. Ten dollars a day is not an unreasonable return to expect from the use of a taxicab and there is nothing else at all which would warrant the belief that this claim is exaggerated.
[4] It is well settled that where a motor vehicle is used in business and the loss of its use for a reasonable time results in a business loss, there may be a recovery on such an item of damage.
In Carkuff v. Geophysical Service, Inc., et al., 179 So. 490, 494, the Court of Appeal for the Second Circuit said:
"* * * The general rule is that recovery of damages for temporary deprivation of use of injured motor vehicle is permissible for the period necessary to make repairs. These should be done promptly, of course. Croft v. Southern Hardwood Lumber Co., 7 La. App. 274; Sherwood v. American Ry. Express Co., 158 La. 43, 103 So. 436."
In Drewes v. Miller et al., 25 So.2d 820, 823, we said:
"The law relating to the right of an owner of a damaged vehicle to recover damages for loss of is use is well settled. * * *"
In Tornabene v. Rau, 34 So.2d 655, we were presented with a claim of a taxicab operator who was deprived of its use while it was undergoing repairs. He operated the cab himself in the day time and rented it to another driver at night. We allowed recovery for the loss of rent as well as for the loss which he sustained because he could not himself operate it during the day. See also Adam v. English, La. App., *Page 56 21 So.2d 633. Plaintiff should have been allowed recovery on this item of damage.
[5] It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is amended by the increase of the amount awarded to $279.39, and, as thus amended, the judgment appealed from is affirmed at the cost of defendants-appellants.
Amended and affirmed.