TALIAFERRO, Judge.
This action, sounding in damages, grew out of an intersectional collision between plaintiff’s automobile and the large, heavy truck of Service Cementing Company, in the daytime. Plaintiff was driving his car easterly on ■ Seventieth Street, in the City of Shreveport. ■ The truck was being driven by one W. H. Hamley, an employee of its owner.; It was proceeding westerly on said street. The. collision occurred in the.area common to Seventieth Street and Linwood Avenue. The National Casualty Company, carrier- of property damage insurance on the .truck, was im-pleaded defendant. The cost of repairing the damages to the car, $711.70, is sought tó' be recovered. ‘Negligence of Hamley, *34 alleged to have been.the cause of the collision, in these respects, is charged, to-wit:
Making a left turn into the intersection in front of plaintiff’s on-coming car without ascertaining if it were safe so to do,, and without giving signal of such intention; not keeping proper lookout for traffic in the opposite direction; traveling at an excessive rate of speed; lack of adequate control; and others not necessary to relate.
The factual issues in the case, by the pleadings and stipulations, have been narrowed to one': Whose negligence caused the accident? On this score defendant defends Hamley and charges that to plaintiff’s own negligence the collision should be accredited. It is alleged by the defendant that when Hamley reached the east side of the intersection the, traffic light showed green, and that he stopped the truck to allow all east bound traffic to pass (since he contemplated making a left turn), and when this had been done, he observed plaintiff’s- car, -more than one hundred (100) feet away on Seventieth Street; that, assuming the presence of the large truck and . its movements would be observed by the plaintiff, then a safe distance from the intersection, he would govern himself accordingly, Hamley began to execute left turn down Linwood Avenue; that said movement necessarily was begun and continued at a very slow speed; that plaintiff was traveling at an illegal rate of speed and did not reduce same as he approached the intersection, and he entered thereon after it had been preempted by the truck; that the collision then occurred. Specific acts of negligence, causing or contributing proximately to the accident, in the following respects, are accredited to. the plaintiff, viz.:
Driving his car at a speed in excess of that allowed by ordinance of the City; not maintaining adequate control of and operating the car carelessly and without proper lookout and due regard for the rights of others.
In the alternative, plaintiff’s negligence in the above related respects is pleaded in bar of his recovery should it be found and held that Hamley’s negligence contributed to any extent to the happening of the collision.
Further, in the alternative, defendant resists the suit on the ground that plaintiff had the last clear chance to avert the accident and did not avail himself of it.
Plaintiff’s demand was rejected and his suit dismissed. He appealed.
Issues of fact mainly are involved. No written reasons for judgment were given by the lower court and neither counsel stated in brief nor in oral argument which defen-se or defenses urged by the defendant was sustained.
Responsibility for the accident depends mainly upon the color of the traffic light at the moment plaintiff began traverse of the intersection.
The width in feet of neither street is shown. Seventieth Street; it is reasonable to ‘ assume, at the locale of the collision, is wider than the average street., Beginning at Linwood Avenue and extending easterly this street is traversed down its center by a boulevard, the width of which, also, is not shown. It is shown that at least two cars may travel abreast on that part of the street on either side of the boulevard.
Two facts are well established: —The truck, facing a red light, was brought to stop prior to undertaking the left turn into the intersection, and the car did not stop prior to entering the intersection.
Plaintiff and his wife, riding by his side, testified that as he approached the intersection, going at a speed between twenty-five and thirty miles per hour, they observed that the light was red and the truck was at stop; that the speed of the car was reduced, thinking the light would change to green ‘before they reached the intersection, which, they say, did happen; that they continued forward and had gone half across the intersection when suddenly the truck, making a left turn, blocked their passage and that to avert running head-on into it, the car’s course was veered to its right, and the collision then occurred, its left front- fender *35 and the right fender or bumper of the truck ’contacting violently.'
Hamley testified that when he reached the east side of the intersection, the traffic light being red, he stopped the truck on his left side, next to the boulevard, and remained in that position until the light showed green. He then drove the truck forward, angling to its left and again stopped it at the west end of the boulevard, being where it contacts the intersection area; that he made this stop in order to allow several cars to pass, going easterly, through the intersection. Of the several cars proceeding easterly the Bates car was the farthest west, being then, he says, in front of a school house, estimated by him to be one hundred fifty (ISO) yards from the intersection; that when the intersection was cleared of east bound traffic, he testified: [1] “I glanced up at this light and it was green, and as I started to look back again the yellow caution part started 'on. It was green and yellow — and I proceeded to go on into Linwood, thinking that the Bates car would stop at the red light.”.
He placed the locus of the collision in the southwest quadrant of the intersection. He was asked by the court if it was his idea that plaintiff’s car entered on the red light, to which he answered: “That is what I would say, yes, sir.” But, he definitely contradicted this testimony later on. We quote what he said, to-wit:
“Q. Did I understand you to say that the light turned red and Mr. Bates came through the red light and hit you ? A. No, sir, you didn’t understand me to say that. I said the light turned yellow and was yellow and green and I proceeded to go through it with the opinion that Mr. Bates, by the time he got there, it would be red. That was the opinion I formed in ¡my mind.' In other words, I drive about 3,000 miles a month, and I consider myself a go'od driver.
“Q. Both of you were on the green light when the accident happened? A. Yes, sir.”
We think this latter testimony .in conformity with the true facts and, this being so, it corroborates the testimony of plaintiff and his wife as regards the light’s color when the collision occurred. In .view of these fact findings, plaintiff was authorized, if traffic conditions in the intersection warranted doing so, to cross it without stopping thereat. While his. speed about the school house was admittedly in excess of the limit (18 miles per hour) fixed by the ordinance of the City, it probably was not excessive as and when he entered the intersection because he (in keeping with a habit) reduced his speed as he approached same. Therefore, we believe the question of speed not a controlling factor in the case.
Plaintiff first took notice of the truck’s presence immediately prior to arriving at the intersection and thought it was then in the lane of travel north of the boulevard. As to the truck’s exact location, plaintiff may be in error. If so, the truck was then in front of the boulevard, facing slightly at an angle toward Linwood, allowing east bound traffic to pass. Anyway, seeing the truck as it was, plaintiff assumed, as he had the right to do, that it would remain at stop untit warranted by traffic conditions and the light’s color, to proceed farther in its turning.
It is true that a green light does not invariably authorize the motorist to attempt to traverse the area protected by it. We gave due consideration to this question in the case of Greenwood v. Romby, La.App., - So.2d -,[1] A motor ist, even though he has a favorable traffic light, is required to closely observe conditions in and about the area which the light is intended to protect, before traversing same. The favorable light goes far toward warranting the traverse, but is not always full protection to the motorist in so doing.
Notwithstanding all of this, when a motorist, approaching an intersection, observes another motorist" on the opposite *36 side thereof, who from appearances is awaiting a favorable light before proceeding farther, he is warranted in assuming that the waiting, motorist will continue to observe the law and not move his vehicle until. he is confronted with' a favorable light and traffic conditions justify moving forward. Applying this rear soning to the facts of the present case, it may be said' that plaintiff was not required, prior to entering the intersection, to stop his vehicle, there being nothing about it out of the ordinary save the truck, and its position was not such as to bar plaiptiff from availing himself of the preference right that the green light conferred upon him.
There is involved in this case the oft considered question, — that of making a left turn on a much traveled concrete highway. That such a turn is fraught with the greatest degree of danger, one of the most hazardous for a ponderous vehicle (in fact, any motor vehicle) to undertake, and should not be undertaken unless conditions clearly warrant it being done, has been pronounced time and time again by the courts of this and other states..
■ Hamley knew" the Bates car was coming toward the intersection, but he did not keep his eye on it as closely as he should, in view of his purpose to make the turn ■ across the south lane of travel. The fact that the truck was an unusually large one, being twenty-two (22') feet long, eight (8') feet high, and weighing, with attached permanent equipment, 18,000 pounds, demanded of Hamley the exercise of extreme care and caution in negotiating a busy intersection. He did not do this.
We conclude that the accident ■ occurred from the negligence of the truck’s operator. The facts, as found by -us, and herein stated, render inapplicable the last -clear chance doctrine. '
For the reasons herein, assigned, ■ the judgment from which appealed, is annulled, avoided. and reversed, and there is now judgment in favor of plaintiff, Thelma L. Bates, and against the defendant, National Casualty Company, in the sum of Seven Hundred Eleven and seventy one-hundredths ($711.70) Dollars, with legal interest thereon from judicial demand, and for all costs of court.