51 So.2d 859 (1950)
GREENWOOD
v.
ROMBY et al.
No. 7565.
Court of Appeal of Louisiana, Second Circuit.
November 2, 1950.
On Rehearing April 5, 1951.
Rehearing Denied April 27, 1951.
Jackson & Mayer, Shreveport, for appellant.
Blanchard, Goldstein, Walker & O'Quin, John A. Dykes, Shreveport, for appellee.
HARDY, Judge.
This is a suit for property damage sustained by an automobile owned by plaintiff. Defendant, after denying negligence and liability, reconvened for damages sustained by his automobile. After trial there was judgment in favor of plaintiff, which judgment rejected defendant's reconventional demand. Defendant has appealed and plaintiff has answered the appeal seeking an increase in the judgment.
The accident which is the cause of this litigation occurred at the intersection of Milam Street and Pierre Avenue in the City of Shreveport about 11:30 P. M. on *860 June 25, 1949. A taxi cab owned by plaintiff and driven by his employee, A. A. Woods, in the course and scope of his employment, was proceeding north on Pierre Avenue and collided with defendant's automobile, which was being driven east on Milam Street, as the result of which the two vehicles sustained the damages for which the respective parties seek redress. Plaintiff alleged that defendant was operating his automobile in a careless and reckless manner, at an excessive rate of speed, against a red light, and that he further failed to keep a proper lookout and was operating a vehicle with a defective accelerator. Defendant, denying plaintiff's allegations of negligence, countered with certain charges of negligence against the driver of plaintiff's vehicle in proceeding at a reckless and careless rate of speed, failing to maintain a lookout, and failure to recognize defendant's right-of-way and preemption of the intersection.
Both plaintiff and defendant testified that their respective entrances into the intersection were made on a green light signal and on this point there is a sharp conflict not only between the testimony of the principals involved but in that of the other witnesses. However, we incline to the belief that the testimony in favor of plaintiff preponderates, and, accordingly, it must be concluded as a matter of fact that the defendant, Romby, entered the intersection against a red light. This conclusion definitely establishes negligence on the part of defendant, which unquestionably was a cause of the resulting collision.
There remains for consideration the question of the existence of contributory negligence on the part of the driver of the plaintiff's taxicab. On this point we think the testimony of the driver of plaintiffs' vehicle in itself is sufficient to justify a conclusion. This witness testified on direct examination:
"I didn't see the Negro (defendant) in time to stop, and knew I couldn't miss him."

* * * * * *
"Q. When did you first see the other vehicle? A. I seen him just before he hit me."
Despite this testimony the witness insisted that defendant was driving at a speed of around 30 miles an hour.
It is obvious in the light of the above quoted testimony that plaintiff was not keeping a proper lookout as he entered the intersection and did not see what he could and should have seen, namely, the approach of defendant's automobile and its progress across the intersection in the path of the witness' car.
The physical facts indicate beyond question that defendant had almost cleared the intersection when his automobile was struck in the vicinity of the right rear fender and bumper by the front of plaintiff's car. This circumstance in itself is sufficient to establish the fact that defendant had not only preempted but indeed had almost cleared the intersection. If plaintiff had been maintaining any sort of reasonable lookout he could have observed the approach of defendant's car in time to have taken precautionary measures in the attempt to avoid an accident.
It is strenuously urged in behalf of plaintiff that his driver had the right-of-way by reason of the green signal light, and, as a consequence, was justified in assuming the way to be clear and proceeding into the intersection. Unfortunately for this contention we do not think the law favors such a conclusion. The rule established by our jurisprudence is completely in accord with the principle stated in Blashfield's Cyclopedia of Automobile Law and Practice, Section 686, as follows: "* * * traffic signal lights do not relieve a motorist of the general duty to operate his car with a careful and prudent regard for the safety of others, and he cannot ordinarily assume that an intersection is clear simply because of appearance of green traffic signal lights."
This rule was succinctly and convincingly stated by Judge Taliaferro in Thomas v. Leonard Truck Lines, La.App., 7 So.2d 753, 755, in these words: "Because a person has the right-of-way on a road or street does not vest him with the privilege of going forward regardless of traffic conditions. *861 A motorist's duty to be careful never ceases."
A situation very similar to the facts before us was presented in the case of Lindsay v. Shreveport Laundries, La.App., 43 So.2d 921, 922. Plaintiff was held to have been negligent by reason of his failure to observe the changing traffic light and in bringing his vehicle into the intersection either against a red light or a caution light. But we further found that defendant, who had reconvened for damages, was guilty of concurrent negligence for the reason which we expressed in these words: "True, the driver of defendant's truck did not undertake to cross the intersection until traffic was accorded the right of way. Nevertheless, since his view to his left was obscured by another truck, we think he is chargeable with the responsibility of proceeding with extreme caution until he could have made clear observation to the east along Jordan Street."
For the reasons set forth we can only conclude that the accident was the result of the concurrent negligence of both the driver of plaintiff's taxicab and the defendant.
Defendant has urged the doctrine of last clear chance, which, however, we do not perceive to be applicable under our comprehension of the facts in the instant case.
For the reasons assigned the judgment appealed from is amended to the extent of rejecting plaintiff's claims, and, as amended, is affirmed. All costs are assessed equally against plaintiff and defendant.

On Rehearing.
TALIAFERRO, Judge.
The facts of this case are clearly narrated in the original opinion. We shall not burden this opinion with full iteration of them. We specifically found and held that Romby, operator of the car going easterly on Milam Street, entered the intersection of this street with Pierre Avenue, on a red light. Re-examination of pertinent testimony confirms that finding. In reaching this conclusion we have been very much influenced by the testimony of Staff Sergeant Thomas Gentry, who was, at the time of the collision, astride his Servi-Cycle on the north side of Milam Street, awaiting a green light before proceeding westerly across the intersection. He further testified that even after the vehicles rested, following the collision, the light, facing him, was still red. This conclusion has been reached despite the testimony of Romby, his companion and another witness introduced by him, that Romby was favored with a green light when he began to traverse the intersection.
Having reached the conclusion that the light was red when Romby entered the intersection, perforce, Woods, plaintiff's driver, faced a green light as he approached and began traverse of it. All this being true, to escape reponsibility for the accident and its results, it devolved upon Romby to clearly prove that Woods' carelessness contributed thereto in such way and manner as to constitute a proximate cause of it. Mature consideration of the testimony has not convinced us that he has done this.
While this and other Courts of the State have announced in several opinions that a green traffic light at or over a street intersection does not warrant a motorist to heedlessly drive into it, regardless of traffic conditions thereabout, it has not been held, and we do not believe it will ever be held, that a motorist who approaches such an intersection is required to exercise the same degree of care and vigilance, with respect to traffic, as he is required to exercise at an intersection not protected by a traffic light. The knowledge that intersectional traffic is regulated by a traffic light serves, to some extent, as assurance that the other fellow will observe same and not heedlessly undertake crossing the intersection unless the color of the light is such that he is thereby invited to do so.
It is made certain by Woods' testimony that he did not see the Romby car in time to avoid colliding with it. Its exact location when he did see it is not shown. Woods did testify that he did not see it until "just before he hit me", but this could easily be construed to mean in *862 point of time, a second or so. If only a second, the Romby car, moving at even 40 miles per hour, would have been at least 58 feet west of him, or a short distance west of the west boundary of the intersection. It will be recalled that the accident occurred near midnight. The headlights of both vehicles were burning and the Romby car, as it approached the intersection, was traveling on a plane considerably lower than the area of the intersection. Milam Street recedes westerly from the intersection. We believe this physical condition of material bearing upon the question of whether Woods should have seen the Romby car in time to escape colliding with it. The testimony of Sergeant Gentry throws much light upon the question. We quote part of it, to-wit:
"Q. How far back were you from the intersection when it turned red? A. I was just approaching itit couldn't have been more than 100 yards.
"Q. And it was still red when you got up to the intersection? A. Yes, sir.
"Q. And at that time you say you brought your Servi-Cycle to a stop and put both feet on the ground? A. Yes, sir.
"Q. At that point where was this Negro's automobile? How far was it away? A. Well, you couldn't tell, because the intersection of Pierre and Milam is on a little hill.
"Q. He was down beyond the top of the hill where you couldn't even see him, is that correct? A. Yes, sir."
The Sergeant and Woods' cab were about on a level. To Woods' left there was a filling station that effectively obstructed his vision until he was very near the south line of the intersection. At the time, only the headlights of the car would have been visible. It appears true, as said by Woods, that had the car been traveling at a speed not excessive, he could have and would have seen it in time to avert the accident.
In view of these facts and circumstances, can it be said that Woods was negligent to any extent in approaching and entering the intersection when and as he did? He had the protection of a green light, and was traveling at a lawful rate of speed, not in excess of thirty (30) miles per hour. We do not believe so.
The contention that Romby was the first to preempt the intersection, and, therefore, enjoyed preference over traffic from north and south, in view of the established facts, is not tenable. One may not acquire right of preemption of an intersection by speeding. Romby was, according to Gentry, driving at a speed in excess of 40 miles per hour, which is in excess of the maximum fixed by law of the City.
Judge Hardy, in Butler v. O'Neal, La. App., 26 So.2d 753, 756, has well defined what is meant by preemption of an intersection. Romby's case does not fall within this definition.
The declarations of Romby immediately after and at the scene of the accident are of some significance. He positively stated to three police officers that he entered the intersection on a red light because the accelerator of his car stuck. He denied on the witness stand making such statement. He must have done so as a Negro boy went so far as to investigate the accelerator's condition while the officers were present.
Romby testified that he saw the light turn green and then testified: "I looked to my right and seen (sic) the cab coming and I accelerated my car to get out of the way." This contradicts his statement that the accelerator stuck. Now, substitute a green light for the red one, in keeping with our finding, and consider same in connection with the above quoted testimony of Romby, and, we believe, the true facts are revealed. It was late at night and Romby felt safe in accelerating his car through a red light in order to pass over the intersection ahead of the cab. He almost succeeded in the effort.
Answering the appeal, plaintiff asked for increase in the amount of the judgment to the extent of $50, being the amount he sued for as loss of profits from non-use of the cab for the five days it was undergoing repairs. He testified that the cab would have earned this amount *863 net in profits had it not been out of use for the period. He has six other cabs, and these, he testified, did profit him for the period at least $10 each per day. He gave figures to substantiate his position. What he says is to no extent contradicted. This method of determining loss in a case of this character is the most dependable and has been recognized by the Courts of this State.
The right of a bus or cab owner to recover damages of the character discussed is well recognized in this State. See: Le Brun v. American Paper Manufacturing Company, Inc., et al., La.App., 41 So.2d 94, and the cases therein cited.
Therefore, for the reasons herein given, the judgment from which appealed is amended by increasing the amount thereof to $354.42, and as thus amended, it is affirmed with costs.
HARDY, J., dissents, adhering to the opinion on original hearing.