CAVANAUGH, Judge.
' This suit is by the plaintiff for property damages to his 1951 Chevrolet sedan automobile in the amount of $135.71, with legal interest from judicial demand until paid, which he claims was suffered in an intersection collision at Scenic Highway and Beech Street in the City of Baton Rouge on May 19, 1953, at approximately 9:15 A.M. The plaintiff charges the defendant with failing to keep a proper lookout and to do anything to avoid an - accident; to stop at an intersection when he had the traffic control light against him; operating a motor vehicle in a wreckless and careiess manner; failing to see and stop before striking another vehicle which had preempted the intersection, and running a red light in violation of the State Highway Regulatory Act, LSA-R.S. 32:1 et seq., and the ordinances of the City of Baton Rouge, Louisiana.
Defendant, after denying the alleged acts of negligence with which he was charged, affirmatively charged negligence against the plaintiff and alleged that the damage to plaintiff’s automobile was due solely and entirely to plaintiff’s gross negligence and carelessness, and affirmatively alleged that plaintiff was driving at a high and reckless speed, at the time the collision occurred when the road surface was wet and the street slippery; that he entered the intersection against an electric stop signal light, failed to keep a proper lookout for traffic approaching the intersection, failed to slacken speed sufficiently or stop the automobile he was driving, or turn it in such manner as to pass around the automobile of defendant, and in operating his automobile with utter disregard for the safety of other motorists using the street. Alternatively, defendant plead contributory negligence of the plaintiff and assigned as the acts of contributory negligence the affirmative acts of negligence previously charged as acts of negligence proximately causing or contributing to the accident as a bar to his right to recover.
The only witnesses to the accident testifying in the case were plaintiff and defend *412 ant. Each of them contended that they approached and entered the intersection when the traffic light was green. At the place where the accident happened, Scenic Highway is a four-lane traffic highway and Beech Street is a two-lane street and approaches Scenic Highway from the east and ends there, and does not traverse Scenic Highway but the continuance of a passageway or street from the west side of Scenic Highway to the entrance gate of the Standard Oil Company plant.
There are two traffic lights at this intersection, one in the center of each half of Scenic Highway.
The impact occurred three and one-half paces from the southeast corner of the intersection and eleven paces from the northeast corner, in the east traffic lane, and the contact was made between the two automobiles when left front fender and grill and bumper of defendant’s car struck the right front door and right front fender 'of the plaintiff’s automobile.
The trial judge rejected the plaintiff’s demands for the reason that he did not believe the plaintiff had proven his case by a preponderance of the testimony. The plaintiff filed a motion for a new trial or rehearing based on the ground that the court did not consider the physical fact that the collision occurred in the east or fourth lane of Scenic Highway and that plaintiff had practically preempted the intersection when the collision occurred. This motion was overruled and the plaintiff applied for and perfected a devolutive appeal from the judgment rejecting his demand.
Both parties contend that the other violated the traffic signal by running the red light. The following rule is quoted from Section 686, Blashfield’s Cyclopedia of Automobile Law and Practice:
“ * * * Traffic signal lights do not relieve a motorist of the general duty to operate his car with a careful and prudent regard for the safety of others, and he cannot ordinarily assume that an intersection is clear simply b'e-cause of appearance of green traffic signal lights.”
We also quote from the same text, Section 1005:
“Under the common system of traffic regulation by lights, with a green light as a ‘go’ signal, a red light as a ‘stop’ signal, and, frequently, a yellow or amber intermediate light, or under any similar system of automatic traffic sig-' nals at intersections of streets, an automobile which enters an intersection in which such a system has been installed on the green light is entitled to continue until it clears the intersection, even though the green changes to amber and the amber to red before he completes the crossing, while traffic, awaiting on intersecting streets the change of lights,, must first ascertain whether the intersection is clear before starting to cross;. even,the ‘go’ signal confers no authority to proceed across the intersection, regardless, of other persons or vehicles already within it.”
Plaintiff testified that as he approached' and entered the intersection he had a green traffic light in his favor; that after the accident and when he got out of his car, the light was still green. He says the light turned green for him when he was about 100 feet from it. The defendant testified that he had a green light and that the light turned green for him when he was about 20 yards from it. Plaintiff said a red truck was standing in the left lane of Scenic Highway going north, which cut off his view of defendant; and defendant first testified he did not see or didn’t recall a truck standing at his left; later he positively denied that any vehicle headed north was stopped at the time of the accident; that his view of plaintiff was unobstructed and that there was nothing that kept him from seeing plaintiff, and there was no reason why he could not see plaintiff.
The Capitol Store has a parking lot on the east side of Scenic Highway just south of this intersection near this traffic light, and defendant testified that he looked to *413 his right into the parking lot at the Capitol Store, and then he was asked- the following questions:
“Q. Do you have any reason why you didn’t look to your left? A. I looked to my left, I mean when I saw him, when I looked to the left this man was coming into me then.
“Q. You were coming down Scenic Highway going north and you testified there was no obstruction; can you give any reason why you didn’t look to your left when you looked to the right and noticed the parked cars at the Capitol Store parking lot? A. No, sir.”
There is a hopeless conflict in the testimony by the plaintiff and the defendant as to which one of them first entered the intersection on a green light, and also as to the presence of the red truck. It does appear that defendant could have seen plaintiff if he had looked if a red truck had not obscured his view, and that when he did look to his left it was too late. It seems to us that defendant failed to see what he should have seen if he had kept a proper lookout. We believe that his own testimony shows that the red truck could have been there, parked as contended by plaintiff, and that he failed to observe it. This is apparent from the answers he gave to questions propounded by the trial judge:
“Q. Are you sure that this truck that he testified about was not stopped there in the highway ? A. I didn’t see any.
“Q. Unless you would be blind, you would be bound to see the truck. A. Well, when I travel down Scenic Highway, it is pretty busy, and I usually keep my mind on the two lanes of traffic I’m in, especially around that corner because I live around there and I know-how much traffic there is in and out of that Capitol Store parking lot and all, and I just never saw him before he got almost in the middle, in the middle of Scenic Highway.
"Q. You understand that his testimony is that there was a red truck parked in what would be the west lane of the northbound double lane of traffic on Scenic Highway? A. Yes, sir. I didn’t see any.
“Q. * * * and you would be traveling in the east lane * * * A. Yes, sir.
“Q. * * * of the north bound double lane. A. Yes, sir.
“Q. In other words, this truck would be right immediately to your left? A. Yes, sir, I didn’t see any, I don’t recall.”
The defendant did finally deny, under questioning by his counsel, that any vehicle headed north was stopped at the time of the accident, .but this denial came only after considerable examination on the subject of the red truck. Up to this point, defendant always maintained he did not see the truck or did not recall having .seen it. His testimony forcibly points to the conclusion that he did not see what he should have seen because he did not look, rather than to the conclusion that the red truck was not present at all where plaintiff says it was. The plaintiff testifies unequivocally from the beginning that the red truck obstructed his view and that it was stopped at the time he proceeded through the intersection. If the stopped red truck obstructed plaintiff’s view, then it likewise obstructed defendant’s view when he had driven alongside of it, and when he reached this intersection he should have appraised traffic conditions east and west and north and south before heedlessly driving into the intersection.
At this intersection where this accident occurred, Scenic Highway is a four-lane highway and is 42 feet wide from curb to curb. There is no dispute as to the location of the point of impact. The exact location was given by the police officer who. investigated the accident and was not-contested. Plaintiff had traversed 33% feet of the intersection when the accident- occurred. Defendant admits that plaintiff had practically crossed over the whole of Scenic Highway when the accident happened *414 and that it happened in defendant’s lane of traffic.
There is no neutral ground between the two sections of Scenic Highway, and defendant lived in the neighborhood and used this highway often, and plaintiff was employed at the Standard Oil plant. Both of them were familiar with the traffic these streets had to accommodate. The defendant testified that the light changed to green when he was about 30 yards from it, traveling at a speed of 25 miles per hour. We believe that if defendant had looked to his left and observed traffic conditions at the time he was approaching this intersection, he could have slackened his speed and stopped his automobile before striking plaintiff and permitted plaintiff to have safely made an exit from the intersection. Bates v. National Casualty Co., La.App., 49 So.2d 33; Greenwood v. Romby, La.App., 51 So.2d 859.
We know that a judgment of a District Judge who sees and hears witnesses in a case of this kind should be given great weight, but the Trial Judge, in his reasons dictated for judgment, made no mention of the question of preemption and we believe that if he had studied the record after the evidence had been transcribed and filed, that he would have reached a different conclusion.
In view of the fact that it is our opinion that the negligence of defendant was the cause of the accident and that the plaintiff had preempted the intersection before the collision occurred, it is necessary for us to consider another ground in which defendant contends that plaintiff has failed to prove that he owned the car he was in at the time of the accident and that the repairs for which he is demanding reimbursement were made necessary by the accident. To support this contention, the defendant cites the case of Scott v. Davis, La.App., 56 So.2d 187, 189. In the cited case, George A. Kemp attempted to drive his Plymouth sedan from the curb in front of an automobile sales company on Canal Street in New Orleans and was backed into by a taxicab of Nola Cabs, Inc., which was operated by Davis L. Davis. Plaintiff sued the cab company and Davis, demanding over $2,000 of damages. One of the items of damages was $55.36 for repairs to plaintiff’s automobile by Ruckstuhl Service; as to all the remaining damages claimed by plaintiff, the court said: “We think it perfectly obvious that plaintiffs were not sincere in their demand”, and later in the opinion the court explained the reason for its conclusion. With respect to the item of $55.36, defendant quotes in his brief, page 6, the paragraph by the court dealing with this amount to the effect that the quoted expression of the court in the Scott case is controlling in the case at bar, but defendant omitted the first sentence of the quoted paragraph of the Scott case. The first sentence reads as follows: “Though $55.36 was claimed as the amount necessary to repair the automobile, there is not one word in the record to show that this amount was expended.”
The plaintiff in this case testified that he has a Chevrolet automobile, Model 1951, and that Peterson Chevrolet estimated the cost of repairing the car at $135.71 as the estimate of the damage to his automobile, and that Peterson made the repairs and that he paid the amount of $135.71 on July 25, 1953 and filed in the record an itemized statement of a bill which was receipted, and states that it covers work done for plaintiff on the automobile.
We believe that there is no similarity between the case at bar and the cited case.
For the reasons assigned, the judgment appealed from is avoided and reversed and judgment is now rendered in favor of the plaintiff, Archie E. Rogillio, and against the defendant, Leon J. Parent, in the full sum of $135.71, together with 5% per an-num interest thereon from judicial demand until paid, together with costs in both courts.