On September 18th 1942, at about 6 p.m., plaintiff's Dodge automobile was being driven by her niece, Mrs. Roger D. Honeycutt, on U.S. Highway No. 90, between Paradis and Harvey, Louisiana. Due to the fact that it began to rain at that time, Mrs. Honeycutt stopped the automobile on the right hand or proper side of the road, in order to adjust the windshield wiper which was not operating efficiently. While thus stopped, the car was struck a violent blow from the rear by a truck owned by defendant and operated by his employee, Percy Bowers. As a result of the impact, the Dodge car not only received severe damage to its rear but the blow struck by the truck was of such force that it propelled the Dodge forward and towards the left of the highway causing it to be struck in its front by another truck which was proceeding in the opposite direction.
Alleging that the accident was due solely to the fault of defendant's truck driver and that, as a result thereof, her car has been damaged to such an extent that it is a total loss, plaintiff brought this suit against defendant to recover damages in the sum of $1,792.50. The alleged damages are itemized as follows: $900, representing the value of the Dodge automobile; $840 for expense incurred by plaintiff in making 28 trips to and from Grand Isle and Gretna in performance of her official duties as Justice of the Peace and $52.50 for storage of the wrecked automobile from the date of the accident to the filing of the suit. *Page 635 
Defendant admits the happening of the accident but resists liability on the grounds (1) that plaintiff is not the owner of the Dodge automobile; (2) that the accident resulted as a consequence of the negligence of Mrs. Honeycutt, in that she brought the Dodge car to a sudden stop on the highway, which was wet, at a time when she knew that the truck was travelling at a reasonable distance to the rear and without giving the truckdriver any warning or opportunity to stop the forward movement of the truck and, (3) in the alternative, that Mrs. Honeycutt was guilty of contributory negligence, barring plaintiff's recovery because the former was acting as her agent at the time of the accident and was engaged on a mission for her account.
After a trial in the lower court on the foregoing issues, there was judgment in plaintiff's favor for the entire amount of damages claimed in the petition. Defendant has appealed, contending that the judgment is erroneous for the reasons set forth in his answer and that, at all events, the damages awarded to plaintiff are highly excessive.
[1, 2] We do not find that it is necessary to discuss in detail defendant's contention that his truck driver was without fault in the premises as a mere statement of the circumstances under which the accident occurred makes it manifest that it would have never happened if the driver of defendant's truck had exercised ordinary care. The record shows that defendant's truck ran into the rear of the Dodge automobile, in broad daylight, while the latter was stopped upon the highway. Under such conditions, the burden of proof was upon defendant to exhibit, by a clear preponderance of evidence, that his employee was free from fault. See Loprestie v. Roy Motors,191 La. 239, 185 So. 11; Overstreet v. Ober, 14 La. App. 633, 130 So. 648, and Muhleisen v. Eberhardt, La. App., 21 So.2d 235. This, he has failed to do. In fact, the truck driver's evidence shows that he was grossly negligent. He says that he had been following the Dodge automobile for about three miles prior to the collision at a speed of 35 miles per hour; that the driver of the Dodge suddenly brought the car to a stop at a time when the truck was 150 or 200 feet to its rear; that he attempted to pass to the left of the Dodge but was unable to do so due to the presence of another truck which was coming from the opposite direction and that, when he discovered that he would be unable to pass, he swerved to the right and onto the shoulder of the roadway where the tractor connected with his truck became uncoupled and struck the rear of the Dodge car. He further explains that he was unable to stop the truck due to the suddenness of the stop made by the driver of the Dodge and the slippery condition of the highway.
These explanations of the truck driver furnish no legal excuse for the results of the accident. He was travelling about 200 feet to the rear of the Dodge and, even if it stopped suddenly (which is contrary to the statements of Mrs. Honeycutt and the two other occupants of the Dodge), there is no valid reason why he should not have had his truck under such control so that it could have been brought to an adequate stop short of a collision.
[3, 4] Defendant's plea of contributory negligence on the part of Mrs. Honeycutt is, likewise, not tenable. In the first place, we are convinced that her testimony (which is corroborated by the evidence of the two ladies who were passengers in the Dodge) to the effect that the car was brought to a gradual stop, prevails over the truck driver's statement to the contrary. Furthermore, even though we should assume that Mrs. Honeycutt was at fault in some particular, her negligence could not be imputed to plaintiff since she had borrowed the car for the purpose of visiting her doctor and was not engaged upon a mission for plaintiff either as agent or employee.
[5] Defendant also contends that the district judge erred in holding him responsible for the reason that plaintiff has failed to prove that she is the legal owner of the Dodge automobile. Plaintiff testified that she is Justice of the 'Peace for the Sixth Ward of Jefferson Parish; that the Dodge automobile was purchased for her account from Collard Motors of New Orleans for $1,200 during April of 1940 by one Reginald C. Schutten; that, although it was purchased in Schutten's name, it was, in truth, her personal property; that title to the car was placed in his name for purposes of convenience as she did not want her political constituents to know that she owned it and that she not only paid the down payment on account of the purchase price but all subsequent installments which were due the mortgagee thereof. In support *Page 636 
of her testimony, she produced a bill of sale, dated May 13th 1940, wherein Schutten appears to have transferred title of the vehicle to her. In addition, she introduced in evidence a certificate of registry of the Motor Vehicle Bureau of this State for the year 1940 showing registration in Schutten's name and, on the rear thereof, a transfer of ownership, signed by him, in her favor.
The only evidence offered by defendant on this question is a registration application for the Dodge for the year 1942 which was filed with the Motor Vehicle Bureau in the name of Schutten. And counsel for defendant postulate that, since the car has always been registered in Schutten's name, plaintiff is estopped from claiming ownership thereto.
[6, 7] We cannot perceive the relevancy of the doctrine of estoppel to the issue of plaintiff's ownership as that doctrine pertains only to cases where the party invoking it has been prejudiced by the representation of another. It is difficult for us to discern that defendant has suffered any injury by reason of the fact that the car was registered in Schutten's name. The judge of the district court evidently believed the plaintiff and we, on our own part, are convinced that she is the real owner of the car.
[8] Counsel for defendant nevertheless persist that, since plaintiff failed to produce Schutten to testify in her behalf, it is to be presumed that, if he had testified, his evidence would have been unfavorable to her, But, in invoking the benefit of this well-recognized rule, counsel assume that Schutten was a material witness within plaintiff's control and that it was necessary for her to produce him in order to establish her title to the car. In so doing, they overlook the fact that plaintiff has produced a bill of sale of the car by Schuttcn to her and that she testified that the signature of Schutten was real. In such circumstances, it would be improper to require her to have produced Schutten in order to avoid the penalty of having the court presume that his testimony would have been unfavorable. If defendant doubted the veracity of plaintiff's statement or the genuineness of the bill of sale, he should have summoned Schutten to impeach her evidence.
[9] Finding that defendant is liable, there remains only to consider whether the damages awarded by the trial court are excessive. Plaintiff claims that the Dodge car has been damaged to such an extent that it is a total loss and she alleges and testifies that the value of the car, at the time of the accident, was $900. The evidence shows that the car was originally purchased from Collard Motors for $1,200 in April, 1940; that it was over two years old at the time of the accident and that it had been driven 43,000 miles. Plaintiff produced, in support of her claim that the car is damaged beyond repair, two experts — namely, Jacob Giardina and H. Trapp, who are engaged in the business of repairing and selling motor vehicles. Mr. Giardina testified that he made an estimate of the damage sustained by the Dodge automobile during 1944; that the necessary repairs would cost $880; that it would be impossible to have the work done for the reason that certain indispensible parts were unavailable due to the War and that, even if it could be repaired, it could not be restored to its previous good condition. Mr. Trapp, who is Salesmanager for Leson Chevrolet Company of Gretna, estimates that the cost of the necessary repairs to the Dodge would be $835 and otherwise corroborates the evidence of Mr. Giardina. Neither Mr. Giardina nor Mr. Trapp gave their opinion respecting the value of the car at the time of the accident, nor did they state its value in its damaged condition.
On the other hand, defendant produced Mr. Robert M. Umbach, owner of OK Radiator and Sheet Metal Works of New Orleans, who has been in the business of repairing and rebuilding wrecked automobiles for about 25 years. He testified that he examined the Dodge Sedan on May 3rd, 1944, and that he estimated that the necessary repairs to the car would cost $300; that these repairs would have taken about 15 days to complete and that he believed that, had the job been done, the car would have been restored to its previous good condition. He further stated that the market value of the car, at the time of the accident, was $750 which was $75 higher than the value shown in the "Blue Book", which is generally accepted in the automobile business as setting forth the true and sound standard of values of used vehicles; that the car, in its damaged condition immediately after the accident, had a salvage value of $250 and that, as of May 1944 when he made his estimate, its sales value had increased to $475. Mr. Umbach further stated that, as of May 1944, due to *Page 637 
labor costs, the repairs could not be made for less than $400 and he admits that it would have been impossible to have made the repairs at that time because certain parts could not be obtained due to wartime shortages.
[10, 11] Considering the foregoing testimony as a whole, we are of the opinion that plaintiff has established with reasonable certainty that the car was so badly damaged that it could not be restored to its previous good condition. In these circumstances, she had the right to treat the car as a total loss and sue for its value as of the time of the accident. The question, therefore, arises as to the value of the car before the collision. The only expert evidence on this question was given by Mr. Umbach, who states that it was worth $750. And, while it is true that plaintiff considers that the car was worth $900, her opinion cannot be accepted as she is not engaged in the automobile business and has no knowledge respecting the values of used cars.
[12] In addition to this, plaintiff is not entitled to recover the full value and also retain the car in her possession — for, since it is shown that the car had a salvage value of $250 immediately after the accident, she would be able to profit rather than be reimbursed for the consequences of the collision. Therefore, allowance of a credit must be made to the defendant for the salvage value of the automobile.
[13, 14] Defendant contends that, since Mr. Umbach testified that the salvage value of the car had increased from $250 in September 1942 to $475 in May 1944, the latter figure should be allowed as a credit against the claim of plaintiff. This proposition is without merit for the reason that damages recoverable in cases such as this are the amount of plaintiff's loss which is the value of the car prior to the accident. If the wreck has a salvage value, the amount thereof must be deducted but, in ascertaining this amount, the value immediately after the accident will be allowed and not the sum for which the damaged vehicle might be sold at a subsequent date. Since the testimony shows that the car had a value of $750 prior to the accident and that its salvage value in its damaged state was $250 in September 1942, plaintiff is entitled to recover the difference between these figures, or the sum of $500.
[15-18] The next item claimed by plaintiff is the sum of $840 for the expense incurred by her in making trips to and from Grand Isle and Gretna in the performance of her official duties as Justice of the Peace. The theory upon which this claim is based is that, as a consequence of the accident, plaintiff was deprived of the use of her car and was required to hire a taxicab, at a price of $30 per trip, on twenty-eight different occasions to go to Gretna from Grand Isle for the purpose of interviewing the sheriff and other parish officials. The trips, says plaintiff, were regularly made each week by her from the date of the accident to the time suit was filed.
Counsel for defendant maintains that the judge was in error in permitting recovery of this item of alleged damage for the reason that, even if the trips were necessary, the expense thereof does not form an element of recoverable damages under our jurisprudence. In support of this contention, counsel cite the cases of Adams v. Bell Motors, Inc., 9 La. App. 441, 121 So. 345; Burrage v. Tri-State Transit Co., La. App., 149 So. 125; Maggio v. Bradford Motor Express, La. App., 171 So. 859; and Sherwood v. American Railway Express Co., 158 La. 43,103 So. 436.
The Sherwood case is inapplicable because, there, the damaged car was not considered to be a total loss. The court merely held that plaintiff was entitled to recover the costs of the necessary repairs to the car, together with the actual expense occasioned by its loss of use during the time required for its repair.
Conversely, the Adams and Burrage cases are directly in point. In the Adams case, the question presented was whether a plaintiff, who sued for the value of his car on the theory that it was totally destroyed in an accident, could recover, in addition to the value of the car, the expense which he had been compelled to defray for hiring another car to carry on his business. The court rejected the claim on the ground that such expense is not recoverable in cases where claim is made for the total destruction of the automobile. It said [9 La. App. 441, 121 So. 347]: "One who recovers the full value of a chattel destroyed through the negligence of another cannot recover for the value of the use thereof after same was destroyed. The measure of damage in such cases is the value of the property destroyed."
Blashfield's Cyclopedia of Automobile Law, Vol. II, page 2004, and numerous *Page 638 
cases from other states are cited by the court in support of this view.
The decision in the Adams case was rendered by our brethren of the Second Circuit and was later followed by the same court in Burrage v. Tri-State Transit Co., supra.
We are in accord with the principle maintained in the Adams and Burrage cases. Those decisions are premised upon the theory that, when plaintiff is reimbursed for the value of his car, he has been fully compensated for his loss and that, since the car is a total loss, he cannot be permitted to claim additional damages which result from the deprivation of use of a chattel which can never be used again. On the other hand, it is equally well recognized that, if the damaged vehicle can be repaired, the injured party may, in addition to reimbursement for the costs of the repairs, recover the actual expense he has defrayed resulting from the deprivation of the use of the car during the time within which the repairs are being made. See Sherwood v. American Railway Express Co., supra, Adams v. Bell Motors Inc., supra, and other cases. In view of this, we believe that there is, and should be, another sound principle which is applicable in cases of this type — that is, in case there may be doubt as to whether the damaged vehicle can be repaired, plaintiff should be permitted to recover for the loss of use of the car for the interval during which he is considering the nature of the damage and ascertaining whether the vehicle can be restored to its former condition. This court has inferentially approved this principle in Maggio v. Bradford Motor Express, supra. There, we recognized that a reasonable time should be given to the owner of the damaged car within which to determine whether the automobile can be repaired and that the expenses, which he is compelled to defray during this interval of time resulting from his loss of its use, are recoverable. Thus, in that matter, we permitted the plaintiff to recover the sum of $10 which represented the expense which he had defrayed for the rental of another automobile at $1 per day in pursuance of his business. This allowance was limited to ten days due to the fact that plaintiff purchased a new car within ten days from the time his car was demolished.
[19, 20] Applying the ruling in the Maggio case to the facts of the case at bar, it is clear that, if plaintiff had been diligent, she could have easily determined, within a short period of time from the date of the accident, that the Dodge automobile could not be restored to its former condition. It was her duty to minimize her damage and it is certain that she could not abandon the wreck and expect to recover damages from defendant for the loss of use of her car for an indefinite period. Since we think that she could have easily ascertained, within a week or two, that the car was damaged beyond repair, we feel that her damage for loss of use of the vehicle should be restricted to two trips from Grand Isle to Gretna and return at $30 per trip, or the sum of $60.
[21] The next item claimed by plaintiff is $52.50 for storage of the damaged automobile from the date of the accident to the filing of the suit at 25¢ per day. What we have said with respect to her claim for loss of use of the car applies with equal force to this item. Since plaintiff failed to tender the damaged car to the defendant within a reasonable time after the accident, say 14 days at the most, her claim for storage will be limited to 25¢ per day for that period, or $3.50.
For the reasons assigned, the judgment appealed from is amended by reducing the amount thereof to $563.50 and, as thus amended, it is affirmed. The costs of this appeal are to be paid by plaintiff and appellee.
Amended and affirmed.