64 So.2d 868 (1953)
TERREBONNE
v.
TOYE BROS. YELLOW CAB CO. et al.
No. 19980.
Court of Appeal of Louisiana, Orleans.
April 20, 1953.
Rehearing Denied May 25, 1953.
*869 Adrian F. Duplantier, New Orleans, for plaintiff-appellee.
Deutsch, Kerrigan & Stiles and Breard Snellings, New Orleans, for defendants-appellants.
Before JANVIER and REGAN, JJ., and LOUIS H. YARRUT, Judge ad hoc.
JANVIER, Judge.
This case results from the collision of two automobiles at the intersection of North Carrollton Avenue and Orleans Street in New Orleans, at about seven o'clock in the morning, on September 1, 1951. The 1935 Ford Tudor Sedan, owned and operated by *870 plaintiff, Terrebonne, was on Orleans Street going in the direction of Lake Pontchartrain, and the taxicab of the defendants was on the river-side roadway of North Carrollton Avenue going in a northerly or downtown direction. The two vehicles met in the intersection. Plaintiff's Ford was admittedly damaged beyond repair. It is conceded that before the accident it had been worth $165, and that he sold it for "junk" for $25. In addition to this loss, he prays for judgment for physical injuries in the sum of $2,000, medical expenses amounting to $26.50, and $50 for the rental of another automobile which he says was necessary in his business and which was used for the two weeks before the could purchase another car.
From a judgment in favor of plaintiff for $800, defendants have appealed.
Facing each driver on the curb at his right there is a "stop" sign and it is conceded that, because of the City Traffic Ordinance, No. 13,702 C.C.S., each driver was required to stop before proceeding into the intersection. It is conceded also by defendants that the driver of their taxicab did not stop in obedience to the stop sign, and that he entered the intersection without first looking for vehicles on the other street, but defendants maintain that the proximate cause of the accident was not the negligence of the operator of their taxicab, but was the negligence of plaintiff himself in that he, after stopping his car before entering the intersection and after seeing that the taxicab was approaching at a high rate of speed and was only a short distance away, proceeded into the path of the taxicab when it was obvious that he could not complete the crossing ahead of the taxicab.
Terrebonne, plaintiff, says that he approached the crossing at a speed of about 25 miles an hour, and that he stopped at the stop sign about three feet "back" from the curb of Carrollton Avenue, and that he then looked to his left and saw the approaching taxicab about 75 feet from the "stop" sign which faced the taxicab. He says that the taxicab was approaching at a speed of about 30 miles per hour and that he started his car in "first gear" and that his "wheel was just about hitting the other neutral ground" when the taxicab crashed into the left side of his car right in the center of the car.
I. J. April, who was a passenger in another car going in the direction in which the taxicab was going, says that he saw the accident and that the taxicab passed the car in which he was sitting at about 45 miles per hour while the car in which he was had stopped for the first roadway of Orleans Street.
George J. Henling, who was also in the car in which April was a passenger, said that the taxicab passed them, but that he could not say how fast it was going. He said, "* * * not very slow; but how fast, how many miles, I couldn't tell you." He says that plaintiff's car had practically completed the crossing and that it "was about two or three feet from the neutral ground." He added, "It was practically across."
Thomas F. Daly, the driver of the taxicab, says that he was not familiar with the house numbers on North Carrollton Avenue, and that he was "looking out the right side of the cab." He added, "I looked a little too long and when I looked up Mr. Terrebonne's car was right in front of me and before I could do anything I had hit him."
We are impressed with the very obvious fact that since plaintiff's car had almost completed the crossing and since it was struck at about the middle of its left side, even the slightest reduction of the speed of the taxicab would have permitted it to complete the crossing in safety.
We also note that the speed of the taxicab could not have been very great for we think it certain that if the driver was looking out of the cab for house numbers, he would not have been operating his cab excessively fast.
Surely Terrebonne, seeing the taxicab approaching at a moderate speed and about 75 or more feet away, and knowing that its driver was required by the City Ordinance to stop it at the stop sign, was justified in assuming that its driver would either stop or at least reduce the speed *871 of the taxicab and permit his vehicle to complete the crossing.
Counsel for defendants call attention to the recognized principle that even when a driver with the right of way approaches an intersection, he should not enter it where it appears that a driver on the other street, obviously unaware that there is another vehicle about to enter the intersection, approaches at such speed that it should be obvious that he does not intend to stop.
Our attention is directed to Lewis v. Travelers Insurance Co., La.App., 55 So.2d 79, 80, in which we said:
"* * * The law is well founded that a person approaching the intersection on a right of way street has a right to assume that traffic approaching it from an inferior street will yield the right of way to him. * * * The only exception to this rule is where the action of the driver approaching on an inferior street is such that it would cause a reasonably prudent person to have reason to believe that he was not going to stop because of his speed or some other action, * * *".
Counsel also cited Scheib v. Ledet, La. App., 57 So.2d 814, 816, in which we discussed a somewhat similar situation and said that possession of the right of way did not entirely relieve a driver of the necessity to exercise some caution.
"* * * The right of way did not relieve Ledet of the necessity of exercising caution, and had he taken the trouble to look he would have seen the truck and could have taken such steps as were available to him for avoiding a collision. * * *"
Counsel also point to Moak v. Callo, 16 La.App. 552, 134 So. 763, in which, discussing a somewhat similar situation, we said:
"He could not, merely because he was entitled to the right of way under the traffic ordinance of the city * * * drive directly in front of an approaching vehicle and then be permitted to recover for injuries sustained."
The facts here do not seem to us to warrant the application of that principle. We repeat that the record indicates that it was not obvious that the driver of the taxicab did not intend to stop or that he was unaware of the approach of plaintiff's car. The speed of the taxicab was not so great as to indicate that it could not be stopped, and plaintiff was justified in assuming that the traffic ordinance would be obeyed.
In Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292, 294, in which the Supreme Court said that although a motorist who has the right of way is not entirely relieved from the obligation of exercising some degree of care, still he has the right to assume that the other motorist will obey the traffic laws. The Court said:
"* * * under the traffic light system a motorist, who is proceeding on a proper signal, should not be held to the same degree of care and vigilance as if no such system prevailed. He has the right to assume that the signals are understood and will be observed and he is not required to anticipate that * * * other motorists will, in violation of law, enter a crossing on a wrong signal. * * *"
We think that the reasoning applied by the Supreme Court is applicable here. A motorist, knowing that another motorist on an intersecting street is required to stop before entering an intersection, may assume that the other motorist will do so unless it is obvious that the speed of the other motorist is so great that he cannot stop or that he does not intend to stop.
Our conclusion is that the accident in this case was caused by the negligence of the driver of the taxicab and that there was no negligence on the part of plaintiff.
When we come to consider the amount of his loss, we find it agreed that plaintiff's car was worth $165 before the accident and that it was totally destroyed, but that he had obtained for the "Junk" which remained $25, so his loss on that item was $140.
It is conceded that his medical expenses amounted to $26.50 and that the cost of towing the wreck away from the scene of the accident was $6, so that on these items he is entitled to $172.50.
*872 He claims $50 as the cost of renting another automobile for the two weeks between the time of the occurrence of the accident and the time at which he could purchase another car. He says that the use of that car was necessary in his business. This claim raises an interesting question.
It is well settled that if an automobile which is used in the business of the owner is damaged, he may rent another car for use in his business while his car is being repaired and may recover the amount paid for rent of that other car. It is also settled that if his car is so badly damaged that he cannot determine immediately whether it would be best to abandon the car as a total loss or to have it repaired and during that time in which he is reaching a conclusion on this point he finds it necessary to rent another car for use in his business, he may, for a reasonable time, pay the rental of the other car and charge it against the tort-feasor as an item of damage. Adam v. English, La.App., 21 So.2d 633.
It is equally well settled that, where the car is obviously totally destroyed, the loss is determined by arriving at the value of the car before the accident and that no additional amount may be claimed for loss of use of the car.
We are not at all certain that this principle which we have last stated would require that a motorist who uses his car in his business should not be granted a short time after its total destruction within which to find another suitable car and to make the necessary arrangements to buy it. In Adam v. English, supra, we discussed at considerable length a somewhat similar question, and as a result of that discussion we are of the opinion that even where the car of the plaintiff is totally destroyed, if it is used in his business, and he finds that a short reasonable time is required for the purchase of a new car, he may, during that time, rent another car and charge the rental thereof as an element of damage.
Plaintiff here says that after the accident "it was two weeks before I was able to get another car." It seems to us that two weeks is a reasonable time for such a plaintiff to locate another car which is suitable and to make the necessary arrangements for its purchase, and accordingly we think that he should be allowed the amount necessarily expended for rent of another car during that period of two weeks.
When we come to investigate the extent of the injuries to plaintiff, we find that they were very minor indeed. On the same afternoon on which the accident occurred, he returned to his office. It is true that he says that he did so because there was a very important meeting to which he was called. On that night he went to the Foundation Hospital to be examined and was charged $1.50. More than two weeks after the accident, after consulting his attorney, he went to his physician who made a thorough examination of him, for which he paid $25. The physician found him to be a "well developed white adult in no apparent distress." The doctor's report showed "no marks of external violence." It is obvious from the report that the doctor found no objective symptoms of any injury or resulting disability.
The accident occurred on Saturday and he returned to work on Monday and was not incapacitated at all.
It is true that the plaintiff states that immediately after the accident he suffered almost continuously with headaches, and that these continued intermittently for some time, but we find nothing except his own testimony to sustain this.
Our conclusion is that the amount allowed, $800, was excessive and should be reduced to $550.
Accordingly, it is ordered, adjudged and decreed that the judgment appealed from be and it is amended by the reduction of the amount thereof to $550 and, as thus amended, it be affirmed, plaintiff-appellee to pay the costs of appeal, defendants-appellants to pay all other costs.
Amended and affirmed.
McBRIDE, J., absent.