AYRES, Judge.
This is an action for personal injuries sustained by plaintiff and for property damage suffered by him as the result of a collision occurring at approximately 10:00 o’clock P.M., July 5, 1953, at the intersection of North Fourth and Desiard Streets in the City of Monroe, between his motor *346 cycle operated by him and an automobile owned, driven and operated by the defendant, Frederick William Williams.
From a judgment in plaintiff’s favor and against the defendant and -his insurer, in solido, for $5,109.37, the defendants have appealed.
On appeal, appellants present the defense of contributory negligence as a bar to plaintiff’s recovery and invoke the doctrine of last clear chance. This position eliminates the question of Williams’ negligence, which was determined adversely to defendants’ contention in the trial court. A review of the facts, however, convinces us of the correctness of His Honor’s ruling on' this point. Defendants have likewise simplified the question of quantum by conceding the adequacy of the award, although the matter is now at issue by appellee’s answer praying for an increase.
Desiard Street, the principal thoroughfare through the business section of Monroe, running generally in an east and west course, is a one-way street west of its intersection with North Fourth Street, and from that point east it takes the usual two-way trafile. A continuation of North Fourth Street across Desiard Street to the south is Catalpa Street.
The record establishes these facts: The plaintiff was riding his motorcycle west on Desiard Street and when he arrived at the intersection with North Fourth Street, the traffic signal light was red, whereupon he stopped, awaited the change in signals, after which he turned north into North Fourth Street and proceeded for approximately a half block to an alley where he stopped his motorcycle and turned around and proceeded in a southerly direction, intending to cross Desiard Street and proceed south on Catalpa Street. The reason for such maneuver was that a lefthand turn from Desiard Street to Catalpa Street was prohibited by ordinance. On reaching again the intersection, the traffic light was red to traffic on North Fourth Street, whereupon he again stopped his motorcycle and lowered one foot to the street surface to balance his machine. The motorcycle was idling until the light turned green for his way of traffic, whereupon he proceeded to enter the intersection in low gear. Plaintiff stated that as he entered the intersection there were two cars in the north lane of Desiard Street west of the intersection which had stopped for the red light against traffic on that street. Defendant and his wife testified also there were one or more cars on Desiard Street but which they say were ahead of them and in their lane of traffic. One or two persons nearby stated the street was devoid of traffic other than plaintiff’s motorcycle and defendant’s automobile. When plaintiff had reached a point south and beyond the middle or center of the intersection, plaintiff's motorcycle was struck by the automobile, knocking it some distance in a northeasterly direction to a point near the north curb of Desiard Street. Plaintiff was spilled on the pavement, severely injured and in an unconscious condition, which condition continued for approximately 36 hours.
Defendant’s contention that plaintiff circled the intersection and struck defendant’s car is not borne out by the evidence. Plaintiff’s version of the course taken by his motorcycle was corroborated by the testimony of several witnesses. Defendant was under the influence of intoxicating liquor. However, plaintiff testified that he never saw defendant’s automobile before or upon entering the intersection and that the first information he had of its presence was when it struck his motorcycle. This is the principal point upon which defendants rely in urging their plea of contributory negligence.
It is contended on behalf of the defendant Williams that he was not violating the speed law. However, plaintiff contends that had he in fact seen defendant’s car there would have been no fact or circumstances to indicate to him that the defendant intended to run a red light or to enter the intersection illegally. Plaintiff had the right of way by virtue of the traffic light in his favor and had a right to rely thereon and to presume that a car approaching the intersection on the unfavored street would obey the law and stop for the red light in the *347 absence of evidence of a motorist’s contrary-intention.
That plaintiff entered the intersection pri- or to defendant’s approach thereto is obvious for the reason that plaintiff started from “Stop” and, according to the testimony, never reached a speed exceeding five miles per hour, whereas defendant never stopped but was proceeding, according to his and his witnesses’ testimony, at some 15 to 20 miles per hour and the impact occurred in the southwest quadrant of the intersection. The distance traveled by plaintiff in the intersection was much greater than that traveled by the defendant, although the defendant was traveling at 3 to 4 times plaintiff’s speed.
The trial court stated in its written reasons for judgment:
“The testimony indicates to the Court that the defendant’s car was some distance from the intersection when plaintiff entered same with his motorcycle running in low gear. There is no question in the Court’s mind that the defendant was operating his car in a grossly reckless and negligent manner and that he ran this red light and hit the motorcycle operated by the plaintiff. There is no evidence whatever to bear out defendant’s contention that the-motorcycle ran into the car. If the driver had really seen the motorcycle in. the intersection, as he stated in his answer and on the stand, there was nothing to prevent the defendant from turning to the right or left and avoiding the accident, even after he entered the intersection, if, as he claims, he had his car. under control.”
We are in accord with His Honor’s finding that defendant’s negligence was the sole and proximate cause of the accident. The point made by defendants of plaintiff’s nonobservance of the approach of defendant’s car has been answered by the Supreme Court in Kientz v. Charles Dennery, Inc. (In re Charles Dennery, Inc.,), 209 La. 144, 24 So.2d 292, 294-295 wherein the court said:
“It can not and will not be disputed that a motorist, who recklessly and without exercising some degree of caution enters an intersection on a favorable light, is not free from negligence if he collides with another motorist who enters an intersection on an unfavorable light. And it can not and will not be disputed that a motorist can not, in the face of imminent danger, rely upon the right of way accorded him by law. But it also can not be disputed that under the traffic light system a motorist, who is proceeding on a proper signal, should not be held to the same degree of care and vigilance as if no such system prevailed. He has the right to assume that the signals are understood and will be observed and he is not required to anticipate that pedestrians or other motorists will, in violation of law, enter a crossing on a wrong signal. The danger at such crossing is less than if there were no such signals and therefore less care is exacted. Clark v. De Beer, 188 So. 517, 520, decided by the Court of Appeal for the Second Circuit. In, that case a motorist traveling on a green light, at a street intersection, struck a bicyclist who was running against a.red light. The Court of Appeal, in its opinion, correctly observed: ‘She (the motorist) observed no one approaching, so she directed and continued her attention in front of her and proceeded forward. It was not encumbent on-her to persist in looking from side to side as she progressed. Her legal duty, in view of the fact that she had the right of way, was to operate her car cautiously and carefully at a moderate speed, to be reasonably diligent in her driving and to maintain a general observation of the intersection.’ The Court also cited its own opinion previously rendered in Roll Osborn & Sons v. Howatt, La.App., 167 So. 466, where an intersec-tional collision occurred between an automobile proceeding on a green light and an ambulance funning against a red light. In that case the Court held that the driver of the ambulance and *348 not the driver of the automobile was guilty of negligence. In rendering its decision the Court stated that the driver of the automobile looked ahead and that the green light was in his favor; that he had no reason to anticipate the approach of the ambulance, and was not delinquent in his failure to see and hear that which he was not legally required to anticipate.”
We think the reasoning applied by the Supreme Court is applicable here. A motorist, knowing that another motorist on an intersecting street is required to stop before entering an intersection, may assume that the other motorist will do so unless it is obvious that the speed of the other motorist is so great that he cannot stop or that he does not intend to stop. Had plaintiff observed defendant’s car at the distance it was evidently from the intersection traveling at the speed it was going, he would have had a right to the benefit of this presumption and, consequently, his failure to observe had no effect upon the occurrence of the accident. The reasoning of the Supreme Court in the aforesaid case was also applied to a similar state of facts by the Orleans Court of Appeal in Terrebonne v. Toye Bros. Yellow Cab Co., 64 So.2d 868.
Under the facts of this case, the defendant Williams, the driver of the automobile, had the better opportunity to observe the situation and apprehend the danger before it became imminent. Plaintiff had stopped his motorcycle in the intersection awaiting a favorable signal before proceeding,, and after change in signals proceeded more than half the distance across the intersection, thus affording ample time and opportunity for the defendant, if he had been keeping a proper lookout, of seeing plaintiff in the intersection and with the opportunity of turning aside, as stated by the trial judge, and preventing the accident. If a last clear chance existed for the prevention of the accident, such chance was with the defendant Williams and not with the plaintiff, and defendant is not, therefore, in a position to invoke this doctrine against the plaintiff. See Bergeron v. Department of Highways, 221 La. 595, 60 So.2d 4.
The expenses expended and incurred by plaintiff as the result of the accident, such as for doctor and hospital bills, drugs, nurses, ambulances, services, repairing motorcycle, loss of clothing and for expenses incurred for caretaker of plaintiff’s property and business during the period of his incapacity, were established and correctly allowed in the sum of $1609.37.
As for personal injuries, the record discloses that plaintiff was hospitalized at Wright-Bendel ‘Clinic for a period of 17 days, where for many hours following his admittance he was in an unconscious state. He sustained severe shock, concussion and contusion of the brain, lacerations of the scalp and of the left hand, extending to and involving three tendons, a laceration and contusion of the right leg, with a cystic formation, contusions and injuries to his back and other portions of the body, and the loss of three teeth. Permanent disability in the use of the left hand has resulted from the severance of the tendons. Some disability, however, already existed in this hand as the result of a previous injury occurring some 20 years before. Plaintiff suffered a great deal of pain as a result of the accident and the treatment for his injuries was painful. We are not convinced by a careful review and consideration of the record in this case that the award of the district court is inadequate. ■
The judgment appealed is, therefore, affirmed at appellant’s costs.