170 So.2d 729 (1965)
NATIONAL MOTOR CLUB OF LOUISIANA, INC.
v.
AMERICAN INDEMNITY COMPANY.
No. 1625.
Court of Appeal of Louisiana, Fourth Circuit.
January 11, 1965.
*730 Allen & Mamoulides, Douglas A. Allen, Metairie, for plaintiff-appellee.
Deutsch, Kerrigan & Stiles, Frederick R. Bott, New Orleans, for defendant-appellant.
Before McBRIDE, SAMUEL and HALL, JJ.
HALL, Judge.
National Motor Club of Louisiana, Inc., hereinafter called "National", brought this suit for property damage against American Indemnity Company the liability insurer of Constance Sue Bryant. The action grows out of an intersectional collision which occurred in the City of New Orleans on March 14, 1962 between plaintiff's 1962 Pontiac sedan driven by Edward E. Crumpler, its state sales manager, and a Chevrolet sedan belonging to and driven by Constance Sue Bryant. The suit is for $1,274.77, of which $100.00 is the amount paid by National for repairs to its automobile under the deductible provisions of its collision insurance, and the balance of the claim amounting to $1,174.77 is for loss of use of the automobile and covers automobile rentals by National at various times between March 14, 1962 and October 8, 1962 when repairs were completed on National's car.
Judgment was rendered in favor of plaintiff for the full amount of its claim and defendant appealed.
Defendant makes no issue of liability nor does it contest the $100.00 deductible item. Defendant however contends that National failed to minimize its damages; that the automobile rentals came about because of this failure to minimize, and that, accordingly, National cannot recover therefor.
As this Court's predecessor said in Terrebonne v. Toye Bros. Yellow Cab Co., 64 So.2d 868, 872:
"It is well settled that if an automobile which is used in the business of the owner is damaged, he may rent another car for use in his business while his car is being repaired and may recover the amount paid for rent of that other car. It is also settled that if his car is so badly damaged that he cannot determine immediately whether it would be best to abandon the car as a total loss or to have it repaired and during that time in which he is reaching a conclusion on this point he finds it necessary to rent another car for use in his business, he may, for a reasonable time, pay the rental of the other car and charge it against the tort-feasor as an item of damage. * * *"
It is equally well settled that under such circumstances the owner is required to minimize his damages by having the repairs made promptly if the vehicle is capable of being repaired; and if the vehicle is so badly damaged that it is doubtful whether it is capable of economic repair, the owner is required to minimize the damages by determining within a reasonable time whether to abandon the car as a total loss or to have it repaired, and to act promptly on that determination. See Alderman v. Henderson, La.App., 130 So.2d *731 157; Drewes v. Miller, La.App., 25 So.2d 820; Adam v. English, La.App., 21 So.2d 633; Morgan v. Hartford Accident & Indemnity Company, La.App., 100 So.2d 279; White v. Trahan, La.App., 111 So.2d 561; Baremore v. Southern Farm Bureau Casualty & Insurance Company, La.App., 147 So.2d 58.
However the failure to minimize is not a complete bar to recovery for the rentals but goes only to the amount recoverable. 15 Am.Jur. "Damages" § 27, p. 423.
The sole question presented by this appeal is whether National delayed an unreasonable length of time in having the car repaired, and this is to be determined by a consideration of all of the circumstances of the case.
The driver of National's car, Mr. Edward E. Crumpler, was injured in the same accident in which the car was damaged. His injuries required him to be hospitalized for 28 days and thereafter he was under his doctor's care until June 29, 1962. About two weeks after the accident, while still in the hospital, Mr. Crumpler, was relieved of his duties as National's state sales manager and a Mr. Dorsey was appointed in his place. On or about July 1, 1962 Mr. Crumpler was transferred to the Dallas, Texas office.
The damaged automobile was picked up by Paretti Pontiac Company at the scene of the accident on March 14, 1962 and moved to its repair shop. Repairs to the car were authorized by National on or about September 1, 1962 and were completed by Paretti on October 8, 1962.
National attempts to explain the delay in authorizing the repairs on the ground that Mr. Crumpler's hospitalization "disrupted the continuity of plaintiff's management particularly with respect to dealing with the damaged automobile" and on the further ground that the car was so badly damaged it could not readily be determined whether it was best to sell the car for salvage or whether to have it repaired, and this necessitated negotiations with its own collision insurer which consumed time.
The record reveals however that Mr. Crumpler's hospitalization had little or nothing to do with the delay.
Mr. Craig, National's president, always made all important decisions both before and after the accident. Moreover two weeks after the accident Mr. Crumpler was relieved of all duties with National's Louisiana corporation and thereafter had nothing to do with its affairs. While Mr. Craig consulted with Mr. Crumpler from time to time there was no "disruption of the continuity of plaintiff's management" which in any way affected the delay in having the repairs made.
No expert testimony on the condition of the damaged car was adduced by plaintiff. Mr. Crumpler testified that it was very badly damaged. He further testified as follows:
"Well, Judge, the entire matter is whether or not the car could be repaired to such a condition to make it subsequent toas to what it was before the accident. I had two people who are mechanics look at the automobile and give me their opinion. The information wasindicated that the car physical could be repaired in good condition. The (sic) was assured to me by the body man at Paretti, but they could not tell me it would operate as well mechanically * * *."
National apparently was endeavoring to get its collision insurer to replace the car with a new one. On this score Mr. Craig testified as follows:
"Q. What was the result of those negotiations to attempt to get a new car, to sell it and get the difference from the insurance company?
"A. We could have done that, I think, perhaps but we didn't go into it that much because they said it *732 was their opinion that it was the sole responsibility of the American Indemnity, and they would prefer to remain out of it."
What period of time the negotiations with the insurance company covered is not disclosed.
There was a delay of five and a half months before National authorized the repairs. Such a delay was inordinate and entirely unreasonable in our opinion and cannot be excused on the ground that Mr. Crumpler was injured or that National was trying to come to a decision on whether to abandon the car or have it repaired.
During the delay National rented a substitute car for use in its business on the following days at the following rentals for which claim is here made:

 1962
April 6-7 $ 27.54
April 20-22 63.17
July 20-22 36.49
July 22-29 340.08
July 29-Aug. 20 538.60
Aug. 20-27 168.89
 _________
 $1,174.77

While plaintiff, for the reason stated, is not in our opinion entitled to recover the total amount of this rental, he is entitled to recover rental for a reasonable time while considering whether the repairs can be made and for the time consumed in making the repairs. The time consumed in making the repairs was 37 days, and if the repairs had been authorized on the very day of the accident, March 14th, they would not have been completed until approximately April 21st or 22nd. Certainly plaintiff would have been entitled to recover the rental charges totalling $90.71 incurred to the latter date. But plaintiff in addition was entitled to a reasonable time to consider before ordering the repairs. It so happens that no rental charges were incurred between April 22nd and July 20, a period of approximately 90 days. So even if plaintiff were allowed 90 days before authorizing the repairs to consider whether it would be best to abandon the car, plaintiff would still be entitled to only $90.71.
Without deciding whether 90 days is a reasonable or an unreasonable time to allow plaintiff within which to come to a decision whether or not to have the car repaired, we are of the opinion, for the reason stated, that plaintiff is entitled to recover $90.71 of the car rentals. Any rentals charges incurred beyond this amount cannot be sustained.
For the foregoing reasons the judgment appealed from is amended by reducing the total amount awarded plaintiff from the sum of $1,274.77 to the sum of $190.71, and as so amended and in all other respects the judgment is affirmed, costs in this Court to be borne by plaintiff.
Amended and affirmed.